IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BYRON SMITH,

                Plaintiff,

v.                                                                             Case No. 06-3061-JTM

GALLEGOS, et al.,

                Defendant.

MEMORANDUM AND ORDER

The court has before it the defendants' Motion to Dismiss or for Summary Judgment (Dkt. 121). The defendants seek an order dismissing the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In the alternative, the defendants ask the court to grant summary judgment in their favor. After thoroughly reviewing the parties' briefs, the court is now prepared to rule. For the following reasons, the court grants summary judgment to the defendants on the basis of qualified immunity.

**I. Background**

Plaintiff Byron Smith is a prisoner who was incarcerated at the United States Penitentiary at Leavenworth ("USP Leavenworth") during the times relevant to his Second Amended Complaint. Plaintiff alleges that defendants violated his Eighth Amendment rights and were deliberately indifferent to his safety by exposing him to very large dosages of asbestos fibers when he was on a work detail. For relief, Smith seeks $150,000 in compensatory damages, $50,000 in punitive damages, an unspecified

amount for future medical expenses, and regular testing by a professional trained in the area of asbestos for the purpose of proper diagnosis and treatment.

Smith filed the present action initially on January 6, 2006 in the District of Columbia, which transferred his case to the District of Kansas due to improper venue. Smith thereafter filed a First Amended Complaint in the District of Kansas on March 27, 2006, incorporating by reference the documentation and facts of the original complaint. On September 28, 2009, Smith filed a Second Amended Complaint, incorporating by reference the relevant documentation and facts in the original complaint. Smith is suing all defendants in their individual capacities.

Smith's complaint alleges that he was exposed to asbestos in 2003, while he was an inmate at USP Leavenworth. From April through June that year, he worked for the Custodial Maintenance Service as an electrician. While working in this capacity, he received a work order from defendant Jeffery Sinclair, the electric shop supervisor, to add a new light fixture in a closet in the education building. Defendant Janet Durbin, an education officer/teacher, met the plaintiff in the education building, unlocked the classroom and the closet, and showed Smith where she wanted the light fixture to be placed. Smith and his work crew began working on the light fixture in the closet, which was approximately 12 feet by 6 feet. During the work, inmate Gonzales, who worked on a different work order, began pulling pipe out of the closet, which caused the closet to become thick with dust from the pipe insulation. Smith alleges this dust contained asbestos, and it irritated his eyes, nose, and throat, causing him to cough. Defendant Durbin also instructed inmate Gonzales to wait until plaintiff and his work crew

2

installed the light fixture before proceeding back into the closet. Smith ended his work on the closet until the dust settled.

The next day, Sinclair gave another work pass to Smith and his crew to return to work on the fixture. Inmate Gonzales was allowed inside to continue his cleaning. Again, Gonzales pulled the insulation off the pipe in the closet, filling the closet with dust. The dust bothered plaintiff's eyes and throat, which caused the plaintiff to stop working until the dust settled. Defendant Durbin instructed inmate Gonzales to leave the closet or a report would ensue. Once the dust cleared, Smith and his crew continued to work on the fixture, but could not get the light to function properly. Durbin called Sinclair, who came to assist. The job was completed in an hour after Sinclair came to help.

In 1994, the Ramsey-Schilling Consulting Group performed a survey to document the presence of asbestos at USP Leavenworth. The Group's final report was extensive. Smith contends that the pipe insulation that was disturbed by Gonzalez was reported as damaged by the Ramsey-Schilling survey. He alleges that this report made the several individual defendants aware of the asbestos in the closet in the education department where he was assigned to work.

This court initially dismissed Smith's Eighth Amendment claims, holding that Smith failed to plead deliberate indifference on the part of defendants. *See* Dkt. 59, at 8–9. On appeal, the U.S. Court of Appeals for the Tenth Circuit reversed this holding, finding that Smith had pled sufficient facts for his claim that the defendants were aware of a substantial risk of asbestos exposure. *Smith v. United States*, 561 F.3d 1090, 1105

3

(10th Cir. 2009). Specifically, the Tenth Circuit found that the existence of the Ramsey-Schilling survey gave a sufficient basis to find that defendants knew about the asbestos in the education department closet. The Tenth Circuit also found that the chain of command provided a basis for finding that several defendants knew about the asbestos in the closet:

> Smith also alleges that defendant Stephanie Wheeler, a member of the safety department, had previously directed Gonzalez's activities with respect to removal of the asbestos material, and that defendant Teresa Hartfield had to approve of all work done in the education department, which implies that Hartfield had to have known of the prior asbestos-related work. Smith alleges that John Parent told him he had previously informed the education department staff about the presence of asbestos in the closet, which would have included defendants Hartfield, Durbin, and John Doe. And, Smith alleges that defendant Durbin was aware of the damaged pipe insulation at the time of Smith's exposure. Moreover, defendant Jeffery Sinclair is alleged to have given Smith a work pass on the second day so that he could return to the closet and finish the job that could not be finished the first day because of the dust exposure, which implies Sinclair's knowledge.

*Smith*, 561 F.3d at 1105 (citations to the docket omitted).

The present issues for consideration are (1) whether this court should dismiss Smith's Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6); (2) whether this court should grant defendants summary judgment under Rule 56; and (3) whether the defendants are entitled to qualified immunity. The court analyzes qualified immunity first because of its potentially broad implications.

4

## II. Qualified Immunity

*A. Legal Standard*

Government officials enjoy the protections of the qualified immunity doctrine from liability for damages if their actions do not violate a clearly established statutory or constitutional right. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to establish that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). The plaintiff must also show that the constitutional right was clearly established. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1204 (10th Cir. 2008).

This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id*. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. *Cortez v. McCauley*, 478 F.3d 110, 1114 (10th Cir. 2007). For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly

incompetent or those who knowingly violate the law." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009).

The court approaches the question of qualified immunity in the context of a Rule 56 summary judgment standard. Summary judgment is appropriate if there is no genuine dispute of the material facts and one party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(a).

*B. Analysis*

On the facts presented to this court, even if the facts are presumed in his favor, Smith cannot establish that the defendants violated a clearly established constitutional right. First, Smith's exposure to asbestos was not severe enough to be considered a violation of his Eighth Amendment right to be free from cruel and unusual punishments. Second, even if he could prove a constitutional violation, Smith cannot establish that the constitutional right that prison officials allegedly violated was "clearly established."

1. No Eighth Amendment Violation

The Eighth Amendment prohibits cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 318 (1986). In order to constitute cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests. *Id.* at 319. Obduracy and wantonness rather than inadvertence or error in good faith characterize the conduct prohibited by the Eighth Amendment. *Id.*

Deliberate indifference to an inmate's serious medical needs is cruel and unusual punishment. *Estelle v. Gambel*, 429 U.S. 97, 104–05 (1976). A violation of this type constitutes the "unnecessary and wanton infliction of pain." *Id.* Indifference may be "manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* However, an accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. *Id.*

The parties do not dispute that neither the Tenth Circuit nor the District of Kansas provides any cases on point. The court looks to other circuits for persuasive authority.

In *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1993), a prisoner alleged that defendants violated his Eighth Amendment rights by placing him in a cell in close proximity to asbestos-insulated pipes for ten months. The Seventh Circuit found that the prison officials' refusal to transfer the prisoner to another cell was insufficient to establish that the defendants acted with deliberate indifference. *Id.* The court found that the prisoner had not alleged that he was exposed to unreasonably high levels of asbestos, noting that "[e]xposure to moderate levels of asbestos is a common fact of contemporary life, and cannot, under contemporary standards, be considered cruel and unusual." *Id.* at 125.

In *Van Collins v. Washington*, 1996 WL 210067, at *2 (N.D. Ill. Apr. 9, 1996), a prisoner alleged that during asbestos abatement at several sites within the prison, he

was repeatedly exposed to airborne asbestos particulates. Van Collins had informed the warden of his exposure, but the warden merely told him to avoid the dangerous asbestos. *Id.* Van Collins claimed he could not avoid the asbestos, and on at least fifty occasions he was "engulfed in a cloud of asbestos dust" as he walked past certain ventilation ducts. *Id.* Van Collins claimed to be infected with asbestos. *Id.* The Northern District of Illinois held that plaintiff's allegations did not allege exposure to asbestos in unreasonably high amounts, therefore, Van Collins's Eighth Amendment claim failed. *Id.* at *7.

Smith analogizes this case to *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990), wherein the Eleventh Circuit held that prison officials were not entitled to qualified immunity when they knowingly exposed a prisoner to friable asbestos. This analogy does not fit the case at hand. In *Powell*, the prisoner's cell contained "exposed ends of pipes covered with what appeared to be friable asbestos." *Id.* at 1461–62. The prisoner informed defendants of the exposed asbestos and demanded to be relocated to an asbestos-free environment. *Id.* After the defendants ignored his request, the prisoner was forced to live—day and night—in a room exposed to friable asbestos. *See id.* at 1463.

The defendants in *Powell* were specifically put on notice of the prisoner's exposure to dangerous asbestos, but they ignored it and allowed his *continuous* exposure to continue. In the case at hand, at worst, defendants were initially on notice that asbestos insulation was present in the closet, but not loose in the air in a friable state. But the report that Smith relies on to establish the defendants' knowledge stated that the asbestos had a low potential for disturbance, and contact with the insulation

8

was necessary to cause a disturbance. Smith was assigned to add a light fixture. He does not allege that he was ordered to contact the asbestos insulation, which would have constituted a known risk of exposure to disturbed asbestos. Therefore, the defendants were only aware of a low risk of exposure to Smith. Further, according to Smith, defendant Durbin was present in the same closet while Smith and his crew worked, exposing herself to the same harm Smith was exposed to. Initially then, the prison officials can hardly be found liable for being indifferent to a serious risk to Smith's health and safety.

After Gonzales pulled off pipe insulation, Smith's exposure and the prison officials' culpability are hardly comparable to those in *Powell*. Smith and his work crew were allowed to wait until the dust settled before continuing their work. Defendant Sinclair provides an affidavit stating that this type of work usually takes a prison crew forty minutes to complete. Durbin took measures to keep Gonzales out of the closet while Smith's crew worked on the light. Even if Durbin and the rest of the defendants had known the dust had included asbestos particles, this minimal exposure does not rise to the level of "unnecessary and wanton infliction of pain." *See Estelle*, 429 U.S. at 104–05. Although no level of asbestos exposure is considered safe, Durbin—the only defendant present during the actual exposure—did not act with deliberate indifference; she exposed herself to the same risk as the prisoners. She exercised the same prudence regarding Smith's health that she did regarding her own. Even if the court were to find Smith's exposure to have been severe, it cannot find that Durbin acted with the requisite mental state.

The prison work detail did not finish the job that day, so it had to come back the next. Again, defendant Sinclair issued a work order and defendant Durbin supervised them. Given the short amount of time these installations typically take, defendants can only have expected any exposure on this day to be of a short duration. Once again, Gonzales was allowed into the closet and pulled insulation off of the pipes, causing another cloud of dust to fill the room. Again, Smith and his crew were allowed to stop working until the dust settled. This time, Durbin threatened Gonzales with reporting if he did not leave the closet, effectively preventing any further release of insulation into the air. After the cloud settled, Smith's crew worked on the light fixture again but could not get the light to turn on. Durbin called Sinclair to come troubleshoot, and he showed up a half hour later. Sinclair then worked in the same closet for an hour, exposing himself to the same environment as Smith. They finally completed the job, and Sinclair left with Smith and his crew.

The court finds that the second day's exposure is the most troubling if Smith's allegations are taken as true. However, these facts still fail to establish "obduracy and wantonness rather than inadvertence or error in good faith" by Durbin or Sinclair. *See Whitley*, 475 U.S. at 319. Even if they knew that asbestos had been released into the air, Durbin and Sinclair did not act with deliberate indifference in response. Durbin exposed herself to the same environment on both days. She did not lock Smith and the work crew in the closet with the airborne particles. She allowed them to stop working until the dust settled. She restricted Gonzales's access to the closet in order to prevent more exposure to everyone present. Sinclair's voluntary hour-long exposure in the same

10

closet doing the same job Smith did makes it clear that he did not consider the level of exposure to be a great risk to his own health and safety, let alone to the prisoners'.

Additionally, in cases of chemical or particulate exposure to prisoners, the Tenth Circuit and the District of Kansas have followed the "unreasonably high level" standard. *See Ciempa v. Ward*, 150 Fed. Appx. 905, 908 (10th Cir. Oct. 19, 2005) (finding insufficient evidence to show exposure to unreasonably high levels of environmental tobacco smoke); *Elrod v. Swanson*, 478 F. Supp. 2d 1252, 1271–72 (D. Kan. Mar. 19, 2007) (assessing exposure to second-hand smoke and finding it did not rise to an unreasonably high level).

The court is not reviewing an exposure of months, which the Seventh Circuit held to be inadequate exposure in *McNeil. See* 16 F.3d at 124–25 (7th Cir. 1993). Rather, Smith was exposed to asbestos for, at most, a few hours. The court is not reviewing exposure to over fifty clouds of dust containing asbestos, which the Seventh Circuit has held to be insufficient. *See Van Collins,* 1996 WL 210067, at *7. Smith was exposed to two clouds of dust, briefly, before leaving the room until the dust settled. The prison officials most directly involved exposed themselves to the same risks. Even if hindsight has revealed this to be an error made in good faith, it does not rises to the level of a violation of the Eighth Amendment's prohibition of cruel and unusual punishments.

This finding applies most directly to Sinclair and Durbin. As the Tenth Circuit has stated, qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly incompetent or those who knowingly violate the law." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009).

11

Sinclair and Durbin may have made mistaken judgments, but the court does not find them plainly incompetent or knowing violators of the law. Sinclair and Durbin are the two defendants most directly involved in the incident; therefore they must be the most culpable. The court's finding of qualified immunity necessarily results in the same finding for the remaining defendants, all of whom were only alleged to be tangentially responsible for Smith's exposure through their knowledge of the report's warning of asbestos insulation in the closet.

2. Right Not "Clearly Established"

Even if Smith's exposure to asbestos constituted a violation of his Eighth Amendment rights, this court finds that no right violated was clearly established. As the court mentioned above, no Tenth Circuit or District of Kansas case has established a defendant's right to be absolutely free of asbestos exposure. Other circuits have failed to agree on what levels of exposure constitute Eighth Amendment violations. As noted above, in *Powell*, the Eleventh Circuit found a violation when exposed asbestos insulation covered pipes in a prisoner's cell and officials refused to relocate him. 914 F.2d at 1461–62. However, in *Jelinek v. Roth*, 33 F.3d 56, 1994 WL 447266, at *1 (7th Cir. Aug. 19, 1994), the Seventh Circuit came to a different conclusion in a similar situation. In *Jelinik*, a prisoner alleged that his Eighth Amendment rights were violated because, among other things, the cell in which he stayed for over a year "contained loose asbestos hanging from the pipes." *Id.* The Seventh Circuit found that although Jelinek "may have been forced to inhale some asbestos, he does not allege that the asbestos was present in any unreasonable or excessive amounts." *Id.* at *2.

Two conflicting conclusions are at play here. First, there is no "safe" level of asbestos exposure. *See United States v. A.A. Mactal Constr. Co.*, No. 89-2372-V, 1992 WL 245690, at *3 (D. Kan. Apr. 10, 1992). At the same time, asbestos covered pipes are ubiquitous, and some exposure is inevitable.

The right to be free from "unreasonably high levels" of asbestos exposure may be inferred from Tenth Circuit particulate exposure cases and general knowledge of the harmfulness of friable asbestos. However, as the court detailed above, Smith was not exposed to an unreasonably high level of asbestos.[1] As a result, defendants cannot be said to have violated any clearly established right of Smith's. Defendants are all entitled to qualified immunity in this case.

## III. Conclusion

The court presumed all facts in Smith's favor, so it considers no material fact to be in dispute. After its analysis, the court holds that defendants are entitled to judgment as a matter of law due to qualified immunity. All defendants are entitled to qualified immunity on Smith's claims because no clearly established right was violated.[2] As a result of the court's ruling on qualified immunity, it does not evaluate the merits of defendants' motion to dismiss or motion for summary judgment.

---

[1] Smith's Second Amended Complaint alleged that his exposure to asbestos evidenced deliberate indifference by the defendants. Smith did not plead that he was exposed to unreasonably high levels of asbestos, although he argues as much in responding to the defendants' motion to dismiss. Regardless, the court holds that Smith could not plead exposure to unreasonably high levels of asbestos on these facts. For these reasons, any motion to amend his complaint would be futile. *See Phelps v. Hamilton*, 166 F.R.D. 489, 490 (D. Kan. Apr. 16, 1996).

[2] Additionally, defendant Eddie Gallegos is also entitled to summary judgment on the undisputed grounds that he was a warden in Florence, Colorado in 2003, and thus, was not working at USP Leavenworth at the time of Smith's alleged exposure.

IT IS THEREFORE ORDERED this 6th day of February, 2013, that defendants' Motion (Dkt. 121) is granted in part and denied in part. The court grants summary judgment to defendants on the basis of qualified immunity. The court declines to address either the motion to dismiss or the motion for summary judgment on their merits.

                                                  s/J. Thomas Marten  
                                                  J. THOMAS MARTEN, JUDGE